## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | Subchapter V |
| IPwe, Inc.,[1] | ) | |
| | ) | Case No. 24-10078 (CTG) |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; AND (E) GRANTING RELATED RELIEF**

IPwe, Inc., the debtor and debtor in possession (the "Debtor") in the above-captioned Chapter 11, Subchapter V case (the "Case"), moves (the "Motion") this Court, pursuant to sections 105(a), 363, 364, 365, and 503 title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Bid Procedures Order"), (a) approving the proposed auction and bid procedures attached as **Exhibit 1** to the Bid Procedures Order (the "Bid Procedures") to be employed in connection with the proposed sale (the "Sale") of substantially all of Debtor's assets (the "Assets"); (b) approving the form and manner of notice thereof; (c) scheduling an auction (the "Auction") if the Debtor receives two or more timely and acceptable Qualified Bids (as defined below) and scheduling a hearing to consider approval of the Sale (the "Sale Hearing"); (d) establishing procedures for the

---

[1] The last four digits of the Debtor's federal tax identification number are 4619. The Debtor's address is 2515 McKinney Avenue, Suite 100B, Dallas, Texas 75201.

assumption and assignment of executory contracts, including notice of proposed cure amounts ; and (e)granting related relief.  In support of this Motion, the Trustee represents as follows:

## Jurisdiction and Venue

1.      The District Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334, which jurisdiction was referred to this Court pursuant to 28 U.S.C. § 157.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

## Background

2.      On the date hereof (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code.  The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this Chapter 11, Subchapter V case, and no committees have been appointed or designated.

3.      Additional information regarding the circumstances leading to the commencement of this case and regarding the Debtor's business and capital structure is set forth in the First Day Declaration, which is incorporated by reference herein.

## Relief Requested

4.      By this Motion, the Debtor requests, pursuant to Bankruptcy Code sections 105, 363, 364, 365 and 503 and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, the entry of (i) an order (a) establishing bid procedures for the Sale of the Assets; (b) approving the form and manner of notice thereof; (c) scheduling the Auction if the Debtor receives two or more timely and acceptable Qualified Bids (as defined below) and scheduling a hearing to consider approval

of the Sale (the "Sale Hearing"); and (d) establishing procedures relating to the assumption and

assignment of executory contracts; and (e) granting related relief; and (ii) an order (a) approving

the Purchase Agreement; (b) authorizing the Sale of the Assets to the Successful Bidder, after the

Auction, if necessary, free and clear of liens, claims, interests and encumbrances; (c) authorizing

the assumption and assignment of certain executory contracts to the Successful Bidder; and (d)

granting related relief.

5.    The Debtor seeks entry of the Bid Procedures Order:

(a)    authorizing and approving the Bid Procedures attached to the Bid Procedures Order as Exhibit 1 in connection with the sale of the Assets;

(b)    approving the form and manner of Notice of an Auction and Sale Hearing with respect to the Sale, attached as Exhibit 2 to the Bid Procedures Order (the "Sale Notice");

(c)    scheduling the Auction and Sale Hearing;

(d)    approving procedures for the assumption and assignment of relevant executory contracts to the Successful Bidder; and

(e)    granting related relief.

6.    In addition, the Debtor will seek entry of the Sale Order at the conclusion of the

Sale Hearing:

(a)    authorizing and approving the Sale of the Assets to the Successful Bidder (as defined in the Bid Procedures) on the terms substantially set forth in the Successful Bid;

(b)    authorizing and approving the Sale free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the Successful Bid;

(c)    authorizing the assumption and assignment of relevant executory contracts to the Successful Bidder; and

(d)    granting any related relief.

7.    The Debtor reserves the right to file and serve any supplemental pleading or

declaration that the Debtor deem appropriate or necessary in its reasonable business judgment,

including any pleading summarizing the competitive bidding and sale process and the results thereof, in support of its request for entry of the Sale Order before the Sale Hearing.

## **The Proposed Sale**

8.    The Debtor believes a prompt Sale of the Assets represents the best alternative available for all stakeholders in this case.

9.    The Debtor requests that the Court approve the following general timeline:

   a.  ***Contract Cure Objection Deadline***:  4:00 p.m. (ET) fourteen (14) calendar days from service of the Contract Notice (as defined below), as the deadline to object to the cure amounts listed in the Contract Notice;

   b.  ***Sale Objection Deadline***: **4:00 p.m. (ET), on March 1, 2024**, as the deadline to object to the Sale;

   c.  ***Bid Deadline***: **on or before 12:00 p.m. (ET), March 4, 2024**, as the deadline by which bids for the Assets (as well as the deposit and all other documentation required under the Bid Procedures for Qualified Bidders (as defined in the Bid Procedures)) must be actually received (the "**Bid Deadline**");

   d.  ***Auction***: **March 5, 2024 at 10:00 a.m. (ET)**, as the date and time the Auction, if needed, will be held at the offices of Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, DE 19801;

   e.  ***Sale Hearing***: on or before **10:00 a.m. (E.T.)   March 8, 2024**, as the date and time for the Sale Hearing.

## **The Bid Procedures Order**

**I.    The Bid Procedures**

10.    In order to optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bid Procedures, attached as Exhibit 1 to the Bid Procedures Order.  The following describes the salient points of the Bid Procedures and discloses certain information:[2]

---

[2] This summary is qualified in its entirety by the Bid Procedures attached as Exhibit 1 to the Bid Procedures Order. All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings in the

- **Bid Requirements.** Any bid by an Acceptable Bidder must be submitted in writing and determined by the Debtor, in its reasonable business judgment, to have satisfied the following requirements (as further stated in the Bid Procedures):

  ***Assets and Purchase Price***:  Each Bid must be a bid to purchase the Assets and must clearly state which liabilities of the Debtor the Acceptable Bidder agrees to assume. Each Bid must clearly set forth the Purchase Price to be paid, including and identifying separately any cash and non-cash components.

  ***Deposit***:  Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the aggregate cash purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtor (each, a "Deposit").

  ***Transaction Documents***:  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"), which shall include a schedule of assumed contracts (the "Contracts") to the extent applicable to the Bid, and a copy of the Purchase Agreement clearly marked to show all changes requested by the Acceptable Bidder (including those related to the Purchase Price and Assets to be acquired by such Acceptable Bidder), as well as all other material documents integral to such Bid.

  ***Sources of Financing***:  The Bid must indicate the source(s) of cash consideration, including proposed funding commitments, sufficient to demonstrate proof of financial capacity to close the proposed transaction, and confirm that such consideration is not subject to any contingencies.  The Bid should include a detailed sources and uses schedule.

  ***Structure***:  The Bid must identify the structure proposed for undertaking the Sale, including the specific Assets of the Debtor, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

  ***Tax Structure***:  The Bid must specify whether it is intended to be structured in a tax-free manner or if any incremental tax liabilities will be incurred by the Debtor under the Bid.

  ***Assumption***:  The Bid must specify which, if any, of the obligations of the Debtor the Bidder proposes to assume.

- **Bid Deadline.**  Each bid must be transmitted via email (in .pdf or similar format) or other means so as to be ***actually received*** by the Debtor, counsel to the Debtor, the DIP Lender, on or before **March 4, 2024, at 4:00 p.m. (ET)** (the "Bid Deadline").

---

Bid Procedures.  To the extent there are any conflicts between this summary and the Bid Procedures, the terms of the Bid Procedures shall govern.

- **The Auction.**  If the Debtor does not receive at least two Qualified Bids, the Debtor will not conduct the Auction.

- **Next-Highest Bidder.**  Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets, as determined by the Debtor in the exercise of its reasonable business judgment, shall be required to serve as a back-up bidder (the "Next-Highest Bidder"), and each Qualified Bidder shall agree and be deemed to agree to be the Next-Highest Bidder if so designated by the Debtor (the "Next-Highest Bid").

- **Highest or Otherwise Best Bid.**  When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor may consider the following factors in addition to any other factors that the Debtor deems appropriate, in consultation with the DIP Lender: (i) the number, type, and nature of any changes to the Purchase Agreement requested by the Qualified Bidder, including the type and amount of Assets sought and obligations to be assumed in the Bid; (ii) the amount and nature of the total consideration; (iii) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (iv) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Bid Documents; (v) the timing of Bidder's proposed closing; and (vi) the tax consequences of such Qualified Bid.

- **Reservation of Rights.**  The Debtor reserves its rights to modify the Bid Procedures in its reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including cancelling the Auction or the Sale.

11.     Importantly, the Bid Procedures recognize the Debtor's fiduciary obligations to maximize sale value, and, as such, do not impair the Debtor's ability to consider all qualified bid proposals, and, as noted, preserve the Debtor's right to modify the Bid Procedures as necessary or appropriate to maximize value for the Debtor's estate.

## II.     Form and Manner of Sale Notice.

12.     On or within five (5) calendar days after entry of the Bid Procedures Order, the Debtor will cause the Sale Notice to be served on the following parties or their respective counsel, if known:  (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the Subchapter V Trustee; (c) counterparties to the Contracts (the "Contract Counterparties"); (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance,

claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all the Debtor's other creditors; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

13.    The Debtor submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one is held); (b) the Bid Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Assets; (e) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (g) notice of the proposed assumption and assignment of the Contracts to the Successful Bidder pursuant to the Purchase Agreement (or to the Successful Bidder arising from the Auction, if any).[3]

14.    The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice and the Notice of Potential Contract Assumption and Assignment as provided for herein, constitutes good and adequate notice of the Sale in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtor proposes that no other or further notice of the Sale shall be required. Accordingly, the Debtor requests that this Court approve the form and manner of the Sale Notice.

---

[3] Pursuant to the Bid Procedures Order, notice of the proposed assumption and assignment of relevant executory contracts to the Successful Bidder pursuant to the Purchase Agreement, the proposed cure amounts, and the right, procedures, and deadlines for objecting, will be provided in separate notices, attached to the Bid Procedures Order as Exhibit 3 (the "Notice of Potential Contract Assumption and Assignment") to be sent to the Successful Bidder.

15.    The proposed Bid Procedures Order contains certain provisions which are required to be highlighted pursuant to Del. Bankr. LR 6004-1, including provisions governing qualification of bidders, provisions governing qualified bids, provisions concerning modification of bidding and auction procedures by the Debtor without further order of the Court, and provisions concerning closing with alternative back-up bidders.

### III.    Summary of Material Terms of Stalking Horse Term Sheet and Bid Protections.

| Seller | IPwe, Inc. |
|---|---|
| Buyer | BUYER |
| Purchase Price | The aggregate consideration for the Purchased Assets shall consist of: (i) a credit bid of all outstanding amounts under the DIP Credit Facility, pursuant to section 363(k) of the Bankruptcy Code; (ii) $750,000 in cash; (iii) assumption of the Assumed Liabilities; and (iv) the value of any liens or claims granted by the Seller to the DIP Lender as adequate protection for any diminution in value of the interests of the DIP Lender in its collateral resulting from the use of cash collateral or otherwise. |
| Sale to Insider **Local Rule 6004-1(b)(iv)(A)** | **The Stalking Horse Bidder is Granicus IP, LLC which owns 24% of the common equity of the Debtor and is an "insider" of the Debtor as defined in Section 101(31) of the Bankruptcy Code.** |
| Agreements With Management **Local Rule 6004-1(b)(iv)(B)** | No agreements exist between management and the buyer. |
| Releases **Local Rule 6004- 1(b)(iv)(C)** | The Stalking Horse Term Sheet does not contain any provisions pursuant to which an entity is being released or claims against any entity are being waived or otherwise satisfied. |
| Private Sale/No Competitive Bidding **Local Rule 6004- 1(b)(iv)(D)** | The Stalking Horse Term Sheet shall be subject to higher and better offers pursuant to the Bidding Procedures set forth in the Bid Procedures Order, including an Auction scheduled to be conducted by the Sellers. |

| | |
|---|---|
| Closing and Other Deadlines<br>**Local Rule 6004-1(b)(iv)(E)** | The Stalking Horse Term Sheet contains various usual and customary closing conditions. |
| Good Faith Deposit<br>**Local Rule 6004-1(b)(iv)(F)** | The Purchaser shall be considered a Qualified Bidder and shall not be required to provide a Good Faith Deposit.  The Purchaser may participate in the Auction and, to the extent set forth in the interim and final orders approving the DIP Credit Facility, as applicable, may, pursuant to section 363(k) of the Bankruptcy Code, credit bid the Loans and the DIP Loans to acquire the Purchased Assets, which credit bid shall be deemed a Qualified Bid. Purchaser shall not be prohibited from making such credit bid "for cause" under section 363(k) of the Bankruptcy Code. |
| Interim Arrangements with Proposed Buyer<br>**Local Rule 6004-1(b)(iv)(G)** | The Seller has not entered into any interim agreement or arrangements with the Stalking Horse Bidder prior to closing regarding the Assets. |
| Use of Proceeds<br>**Local Rule 6004-1(b)(iv)(H)** | The Stalking Horse Term Sheet does not contain any provision pursuant to which a debtor proposes to release sale proceeds on or after the closing without further Court order, or to provide for a definitive allocation of sale proceeds between or among various sellers or collateral. |
| Tax Exemption<br>**Local Rule 6004-1(b)(iv)(I)** | The Stalking Horse Term Sheet does not provide for a tax exemption under section 1146(a) of the Bankruptcy Code. |
| Record Retention<br>**Local Rule 6004-1(b)(iv)(J)** | The Debtor will retain, or have reasonable access to, its books and records to enable it to administer its bankruptcy case. |
| Sale of Avoidance Actions<br>**Local Rule 6004-1(b)(iv)(K)** | All Avoidance Actions are Excluded Assets under the Stalking Horse Term Sheet. |
| Requested Findings as to Successor Liability<br>**Local Rule 6004-1(b)(iv)(L)** | The Proposed Sale Order provides that the Buyer shall not be deemed a "successor" in any respect to the Debtor and its estate as a result of the consummation of the sale. |

| | |
|---|---|
| Sale Free and Clear of Unexpired Leases<br>**Local Rule 6004-1(b)(iv)(M)** | The Proposed Sale Order includes standard language approving the sale of assets free and clear of all Liens, Claims and other interests. |
| Credit Bid<br>**Local Rule 6004-1(b)(iv)(N)** | The Purchaser shall be considered a Qualified Bidder and shall not be required to provide a Good Faith Deposit.  The Purchaser may participate in the Auction and, to the extent set forth in the interim and final orders approving the DIP Credit Facility, as applicable, may, pursuant to section 363(k) of the Bankruptcy Code, credit bid the Loans and the DIP Loans to acquire the Purchased Assets, which credit bid shall be deemed a Qualified Bid.  Purchaser shall not be prohibited from making such credit bid "for cause" under section 363(k) of the Bankruptcy Code. |
| Relief from Bankruptcy Rule 6004(h)<br>**Local Rule 6004-1(b)(iv)(O)** | The Proposed Order provides that the provisions of Bankruptcy Rules 6004 and 6006, staying the effectiveness of the Proposed Sale Order for fourteen (14) days, are waived, and the Proposed Sale Order shall be effective and enforceable upon entry. |
| No-Shop or No-Solicitation Provisions<br>**Local Rule 6004-1(c)(i)(C)(1)** | The Stalking Horse Term Sheet does not include any limitations on the Debtor's ability or right to solicit higher or otherwise better bids. |
| Break-Up/Topping Fees and Expense Reimbursement<br>**Local Rule 6004-1(c)(i)(C)(2)** | The Bid Procedures and Stalking Horse Term Sheet do not provide for a Break-Up Fee or Expenses Reimbursement. |
| Bidding Increments<br>**Local Rule 6004-1(c)(i)(C)(3)** | As set forth in the Bidding Procedures attached to and approved by the Bid Procedures Order, the first overbid at the Auction shall be in an amount not less than the amount of the Baseline Bid plus $100,000 (the "Minimum Overbid").  At each round of bidding, Qualified Bidders may submit successive bids higher than the Leading Bid from the prior round.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to the Baseline Bid, the Debtor will, at each round of bidding, consider and/or give effect to (a) any Bid Protections payable to the Stalking Horse Bidder under the Stalking Horse Term Sheet; (b) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured; and (c) any additional costs that may be imposed on the Debtors. |

| Treatment of Break-Up and Topping Fees and Expense Reimbursement at Auction. **Local Rule 6004-1(c)(i)(C)(4)** | The Bid Procedures and Stalking Horse Term Sheet do not provide for a Break-Up Fee or Expenses Reimbursement |
|---|---|

## Basis for Relief

I.    **The Relief Sought in the Bid Procedures Order is in the Best Interests of the Debtor's Estate and Should be Approved.**

16.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Integrated Res., Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

17.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *see also Food Barn Stores, Inc.*, 107 F.3d at 564–65 (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Res.*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

18.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions.  *See Integrated Res.*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y.

1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate"); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other provisions negotiated in good faith).

19.    The Debtor believes that the proposed Bid Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets.  The proposed Bid Procedures will allow the Debtor to conduct the Sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best value for the Assets and who can demonstrate the ability to close a transaction. Specifically, the Bid Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

20.    At the same time, the Bid Procedures provide the Debtor with a robust opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the Sale.  As such, creditors of the Debtor's estate can be assured that the consideration obtained will be fair and reasonable and at or above market.

21.    The Debtor submits that the proposed Bid Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings and are consistent with other procedures utilized in other cases.  *See In re Quicksilver Res., Inc.*, No. 15-10585 (Bankr. D. Del. Oct. 6, 2015); *In re Source Home Entm't, LLC*, No. 14-11553 (Bankr. D. Del. July 21, 2014); *In re Ultimate Escapes Holdings, LLC*, No. 10-12915 (Bankr. D. Del. Oct. 8, 2010); *In re PTC Alliance Corp.*, No. 09-

13395 (Bankr. D. Del. Nov. 6, 2009); *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (Bankr. D. Del. Sept. 22, 2009); *In re VeraSun Energy Corp.*, No. 08-12606 (Bankr. D. Del. Feb. 19, 2009).

**II.    The Form and Manner of the Sale Notice Should be Approved.**

22.    Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide creditors with 21 days' notice of the Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

23.    As noted above, within five (5) calendar days of entry of the Bid Procedures Order, the Debtor will serve the Sale Notice upon the following parties or its respective counsel, if known: (a) the U.S. Trustee); (b) the Subchapter V Trustee; (c) Contract Counterparties; (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all the Debtor's other creditors; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

24.    The Debtor submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice, constitutes good and adequate notice of the Sale in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, the Debtor requests that this Court approve the form and manner of the Sale Notice.

**III.    The Sale Should Be Approved as an Exercise of Sound Business Judgment.**

25.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See Martin*, 91 F.3d at 395 ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *Schipper*, 933 F.2d at 515; *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc's, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

26.     Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995); *see In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate."); *Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

**a.    A Sound Business Purpose Exists for the Sale.**

27.     As set forth above, the Debtor has a sound business justification for selling the Assets.  The Sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Assets.  Consequently, the ultimately successful bid, after being subject to a "market check" in the form of the Auction, will constitute,

in the Debtor's reasonable business judgment, the highest or otherwise best offer for the Assets and will provide a greater recovery for its estate than any known or practicably available alternative. *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 980, at *13 (Bankr. D. Del. Apr. 2, 2001) ("The auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

28.    Thus, the Debtor submits that the Successful Bidder's Purchase Agreement (a "Purchase Agreement") will constitute the highest or otherwise best offer for the Assets and will provide a greater recovery for the Debtor's estate than any other available alternative.

29.    As such, the Debtor's determination to sell the Assets through an Auction process and subsequently to enter into the Successful Bidder's Purchase Agreement will be a valid and sound exercise of the Debtor's business judgment.  The Debtor will submit evidence at the Sale Hearing to support these conclusions.  Therefore, the Debtor requests that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtor's business judgment and is rightly authorized.

**b.    Adequate and Reasonable Notice of the Sale Will Be Provided.**

30.    As described above, the Sale Notice:  (a) will be served in a manner that provides at least 21 days' notice of the deadline for objecting to the Sale and the date, time, and location of the Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Sale or the assumption and assignment of the Contracts; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale.  Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bid Procedures Order after notice and a hearing before it is served on parties in interest.

**c.    The Sale and Purchase Price Reflects a Fair Value Transaction.**

31.     It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market.  *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *Trans World Airlines*, 2001 WL 1820326, *4 ("The auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

32.     Moreover, as noted above, even as the Debtor moves forward with the Sale, the Debtor will continue to market the Assets and solicit other offers consistent with the Bid Procedures, including, for example, by contacting previously solicited parties, continuing to provide acceptable bidders with access to requested information, considering a variety of alternative transaction structures, and otherwise assisting the Debtor with all efforts to increase transaction value.  In this way, the number of bidders that are eligible to participate in a competitive Auction process will be maximized.

### d.  The Sale has been Proposed in Good Faith and Without Collusion and the Successful Bidder will be a "Good-Faith Purchaser."

33.     The Debtor requests that the Court find the Successful Bidder arising from the Auction is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets.

34.     Section 363(m) of the Bankruptcy Code provides:

[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

35.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Andy Frain Srvs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same); *In re Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986); *In re Trism*, 328 F.3d 1003, 1006 (8th Cir. 2003).

36.     The Debtor submits that any Successful Bidder arising from the Auction, is or will be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Purchase Agreement, or any marked versions thereof, are or would be good-faith agreements on arms'-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.[4] Any Purchase Agreement with a Successful Bidder will be the culmination of a competitive Auction process in which all parties will presumably be represented by counsel and all negotiations will be conducted on an arm's-length, good-faith basis. There is no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair

---

[4] The Debtor believes that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for any Successful Bidder arising from the Auction. Pursuant to the Bid Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bid Procedures. In addition, the Debtor will not choose as the Successful Bidder or Next Highest Bidder (as defined in the Bid Procedures) any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

advantage of other bidders" or similar conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code. And, with respect to potential bidders, the Bid Procedures are designed to ensure that no party is able to exert undue influence over the process. Any bids that the Debtor ultimately determines to be a successful bid will have been evaluated and approved by the Debtor in consultation with its advisors. Accordingly, the Debtor believes that the Successful Bidder arising from the Auction and Purchase Agreement (or marked version thereof) should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

**e. The Sale Should be Approved "Free and Clear" under Section 363(f).**

37.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

38.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtor's sale of the Assets free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable Purchase Agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

39.     The Debtor submits that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or

by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor

may possess.  The Debtor accordingly requests authority to convey the Assets to the Successful

Bidder arising from the Auction free and clear of all liens, claims, rights, interests, charges, and

encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach

to the proceeds of the Sale.

## IV.     The Assumption and Assignment of Relevant Executory Contracts Should Be Approved.

### a.     The Contemplated Assumption and Assignment Reflects the Debtor's Reasonable Business Judgment.

40.     To facilitate and effectuate the sale of the Assets, the Debtor is seeking authority to

assign or transfer relevant executory contracts to the Successful Bidder arising from the Auction.

41.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its

executory contracts, subject to the approval of the court, provided that the defaults under such

contracts are cured and adequate assurance of future performance is provided.  The Debtor's

decision to assume or reject an executory contract must only satisfy the "business judgment rule"

and will not be subject to review unless such decision is clearly an unreasonable exercise of such

judgment.  *See Grp. of Institutional Invs. v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 318

U.S. 523 (1943) (applying Bankr. Act section 77(b), predecessor to Bankruptcy Code section 365,

and rejecting test of whether executory contract was burdensome in favor of whether rejection is

within debtor's business judgment); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d

36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space

afforded [to] the debtor to consider whether to reject or assume executory contracts under the

Code."); *In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The

standard for approving the assumption of an executory contract is the business judgment rule"); *In*

*re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

42.     Here, the Court should approve the decision to assume and assign relevant executory contracts in connection with the Sale as a sound exercise of the Debtor's business judgment.  Such executory contracts are necessary to operate the Assets and, as such, are essential to inducing the best offer for the Assets.  Also, such executory contracts will be assumed and assigned through the process approved by the Court pursuant to the Bid Procedures Order and, thus, will be reviewed by key constituents in this Chapter 11 Case.

43.     Accordingly, the Debtor submits that the assumption and assignment of relevant executory contracts should be approved as an exercise of its business judgment.

**b.   Defaults Under Assigned Contracts will be Cured Through the Sale.**

44.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain."  *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

45.     The Debtor submits that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied because the Purchase Agreement will require that all defaults associated with, or that are required to properly assume, the relevant executory contracts

21

be cured and paid by the Purchaser pursuant to the escrow to be established under the Purchase Agreement.  Because the Bid Procedures Order (once approved) provides a clear process by which to resolve disputes over cure amounts or other defaults, the Debtor is confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of non-debtor parties.

### c.    Non-Debtor Parties Will Be Adequately Assured of Future Performance.

46.    Similarly, the Debtor submits that the third requirement of section 365(b) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here.  "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case."  *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).  Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance."  *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

47.    The Debtor believes that it can and will demonstrate that the requirements for assumption and assignment of relevant executory contracts to the Successful Bidder arising from the Auction will be satisfied.  As required by the Bid Procedures, the Debtor will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder (*e.g.*,

financial credibility, willingness, and ability of the interested party to perform under the Contracts) and will demonstrate such financial wherewithal, willingness, and ability to perform under any relevant executory contracts assigned to the Successful Bidder arising from the Auction.  Further, the Court and other interested parties will have ample opportunity to evaluate and, if necessary, challenge the ability of any Successful Bidder arising from the Auction to provide adequate assurance of future performance and object to the assumption or proposed cure amounts.  The Court therefore should have a sufficient basis to authorize the Debtor to reject or assume and assign relevant executory contracts as set forth in the Purchase Agreement.

### V.     Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.

48.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The Debtor requests that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

49.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Comm. Notes to Fed. R. Bankr. P. 6004(h) & 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure."  10 COLLIER ON BANKRUPTCY ¶ 6004.10 (15th

rev. ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

50.     To maximize the value received for the Assets, the Debtor seeks to close the Sale as soon as possible after the Sale Hearing.  Accordingly, the Debtor hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Notice

51.     Notice of this Motion has been given to: (a) the DIP Lender; (b) all parties who have expressed a written interest in some or all of the Assets; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) the Office of the United States Trustee for the District of Delaware; (e) the Subchapter V Trustee; (f) the Debtor's 20 largest unsecured creditors; and (g) the Internal Revenue Service. In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

## No Prior Request

52.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this Chapter 11 Case.

WHEREFORE, the Debtor requests that the Court: (i) enter the Bid Procedures Order, substantially in the form attached as Exhibit A, (ii) at the conclusion of the Sale Hearing, enter the Sale Order, substantially in the form attached as Exhibit B; and (iii) grant such other relief as is necessary.

Dated: January 24, 2024          GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Ronald S. Gellert*
Ronald S. Gellert (No. 4259)
1201 N. Orange St., Ste. 300
Wilmington, DE 19801
Phone: (302) 425-5806
Facsimile: (302) 425-5814
Email: rgellert@gsbblaw.com

*Proposed Attorneys for Debtor and Debtor-in Possession*