IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>IPwe Inc.,[1]<br><br>          Debtor. | )<br>)  Chapter 11<br>)  Subchapter V<br>)<br>)  Case No. 24-10078 (CTG)<br>)<br>)  RE: D.I. 4 and 21<br>) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (II) AUTHORIZING DEBTOR TO (A) OBTAIN POST-PETITION SECURED FINANCING FROM ENTITY CONTROLLED BY A FORMER BOARD MEMBER WHO, ALONG WITH CERTAIN AFFILIATES, OWNS MORE THAN 20% OF THE EQUITY  (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING AND (V) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion")[2] of IPwe, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), in this chapter 11 case (the "Chapter 11 Case") for entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105(a), 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):

    (a)    authorizing the Debtor to continue to use Cash Collateral (as defined below) in which the Prepetition Secured Parties (as defined below) have an interest in accordance with the terms and conditions of this Interim Order, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of its Cash Collateral;

---

[1] The last four digits of the Debtor's federal tax identification number are 4619.  The Debtor's registered agent is listed at 1209 Orange Street, Wilmington, DE 19801.

[2] Capitalized terms not defined herein are used as defined in the Motion.

(b) authorizing the Debtor to incur debtor-in-possession financing pursuant to Section 364(b) in an aggregate amount not to exceed $500,000, of which $150,000 will be utilized on an interim basis;

(c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(d) scheduling, pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(c), a final hearing (the "<u>Final Hearing</u>") to consider entry of the Final Order approving the relief granted herein on a final basis;

(e) waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(f) granting related relief;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the evidence submitted, and having heard statements in support of the relief requested therein at a hearing before this Court (the "<u>Interim Hearing</u>"); and the relief requested in the Motion being in the best interests of the Debtor's estate, its creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:[3]

A. <u>Disposition</u>.  The relief requested in the Motion is granted on an interim basis in accordance with the terms of, and to the extent set forth in, this Interim Order.  Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein.  This Interim Order shall become effective immediately upon its entry.

B. <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363(a) of the Bankruptcy Code, in or on which the Prepetition Secured Parties have a lien, security interest or other interest.

C. <u>Findings Regarding the Prepetition Secured Parties' Consent to Use of Cash Collateral</u>.  The Prepetition Secured Parties have consented to the adequate protection provided for in this Interim Order; *provided*, *however*, that the consent of the Prepetition Secured Parties, the use of the Prepetition Collateral (including Cash Collateral), and the sufficiency of the adequate protection provided for herein are expressly conditioned upon the entry of this Interim Order.

D. <u>Necessity of Relief Requested</u>.  The ability of the Debtor to maintain its property and administer this Chapter 11 Case requires continued use of Cash Collateral and the incurrence of the DIP Facility.  In the absence of the use of Cash Collateral and the incurrence of the DIP Facility, the continued management of the Debtor's affairs would not be possible and immediate and irreparable harm to the Debtor, its estate and its creditors would occur.  The Debtor does not have sufficient available sources of financing to administer this Chapter 11 Case or to maintain its

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

property without the use of Cash Collateral and the incurrence of the DIP Facility. The relief requested in the Motion and entry of this Interim Order is therefore in the best interests of the Debtor and its estate and necessary in order to maximize the value of the Debtor's estate.

E. <u>Arm's-Length, Good Faith Negotiations; Best Interest</u>. The terms of this Interim Order were negotiated in good faith and at arm's-length between the Debtor and the Lender. Authorization to use of Cash Collateral and to incur the DIP Facility in accordance with this Interim Order are in the best interests of the Debtor's estate and consistent with its fiduciary duties.

F. <u>Good Cause Shown; Best Interest</u>. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2. Absent entry of this Interim Order, the Debtor's estate will be immediately and irreparably harmed. This Court concludes that good cause has been shown and entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the Debtor to maintain its assets and satisfy administrative obligations in this Chapter 11 Case.

G. <u>Notice</u>. In accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014, and Local Rules 2002-1 and 4001-2, notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtor. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested herein, and the Interim Hearing complies with the applicable Bankruptcy Rules and Local Rules.

Based on the foregoing, the Motion, the First Day Declaration, and the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. <u>Motion Granted</u>.  The Motion is GRANTED, and the Debtor's use of Cash Collateral and other Prepetition Collateral, and the Debtor's incurrence of the DIP Facility, in each case on an interim basis and subject to the terms and conditions of this Interim Order, are authorized.

2. Authorization.

    (i) <u>Specified Period</u>.  Subject to the terms and conditions of this Interim Order, the Debtor is authorized to use Cash Collateral in accordance with the Budget (as defined below) for the period (the "<u>Specified Period</u>") from the Petition Date through the date which is the earliest to occur of (a) the expiration of the Remedies Notice Period (as defined below) and (b) the date that is twenty (20) days from the Petition Date if the Court has not entered the Final Order on or before such date (unless such date is extended with the written consent of the Prepetition Secured Parties).

    (ii) <u>Use of Cash Collateral</u>.  Subject to the provisions of this Interim Order, and in accordance with the Budget, Cash Collateral may be used during the Specified Period by the Debtor to: (a) finance its working capital needs and for any other general corporate purposes; and (b) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses, including those of the Debtor's professionals to the extent approved by the Court) and other administration costs incurred in connection with and for the benefit of this Chapter 11 Case. Nothing in this Interim Order shall authorize (A) any disposition of any assets of the Debtor or its estate, including, without limitation, any disposition of its interests or rights in any intellectual property or software assets (including, without limitation, any proprietary quantitative trading software or software code or any other component thereof), or (B) the Debtor's use of any Cash

Collateral or proceeds resulting therefrom except as permitted in this Interim Order and in accordance with the Budget.

      (iii)    <u>DIP Facility</u>. The Debtor shall be authorized to borrow, pursuant to Section 364(b) of the Bankruptcy Code, from Granicus IP, LLC, up to $150,000 in postpetition debtor-in-possession financing (the "<u>DIP Facility</u>"), subject to the Budget and in the business judgment of the Debtor.

      (a)    <u>Interest and Repayment</u>: The DIP Facility shall incur interest at a rate of 5% per annum, which amounts shall accrue but shall not be payable until the Maturity Date. After an Event of Default, the interest shall accrue at an interest rate of ten percent (10%) per annum payable monthly. No amounts borrowed shall be repaid until the Maturity Date. No amounts borrowed shall be repaid until the Maturity Date.

      (b)    <u>Fees</u>. DIP Lender shall charge no fees relating to the DIP Facility.

      (c)    <u>Maturity Date</u>. The DIP Facility shall mature on the earlier to occur of the earlier of: Sale of Substantially all of the Debtor's assets or Effective Date of the Plan and the expiration of any Remedies Notice Period.

      (d)    <u>Condition to Borrowing</u>. No Event of Default shall have occurred and exist at the time of any draw request contemplated herein.

      (e)    <u>Use of Proceeds</u>. The proceeds of the DIP Facility may be used during the Specified Period by the Debtor to: (a) finance its working capital needs and for any other general corporate purposes; and (b) pay related transaction costs, fees, liabilities and expenses and other administration costs incurred in connection with and for the benefit of this Chapter 11 Case. Nothing in this Interim Order shall authorize (A) any disposition of any assets of the Debtor or its estate, including, without limitation, any disposition of its interests or rights in any intellectual property or software assets (including, without limitation, any proprietary quantitative trading software or software code or any other component thereof), or (B) the Debtor's use of any DIP Facility proceeds except as permitted in this Interim Order and in accordance with the Budget.

      (f)    <u>Documentation</u>. The Debtor is authorized but not directed to enter into a promissory note memorializing the DIP Facility (the "<u>DIP Promissory Note</u>"); provided that the Debtor shall be permitted to

borrow, and DIP Lender is authorized to lend, up to $150,000 of the amount of the DIP Facility on the basis of this Interim Order, and this Interim Order shall serve to memorialize the Debtor's obligation under the DIP Facility.

(iv)    Budget.  The Debtor has presented an initial budget attached hereto as **Exhibit 1** (the "Budget").  The DIP Lender and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or DIP Facility proceeds, and the Debtor shall have no authority to use Cash Collateral or DIP Facility proceeds, hereunder other than in accordance with the Budget, subject to the Budget Covenants (as defined below) and as set forth in this Interim Order.  The Budget may be modified from time to time by the Debtor with the consent of the Prepetition Secured Parties in its sole discretion, but without need for further Court order.

3.    Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Interim Order.

4.    Adequate Protection of Prepetition Secured Parties.  Pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code (such diminution in value, the "Adequate Protection Amount"); *provided that* the avoidance of the Prepetition Secured Parties' interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Secured Parties's interests in Prepetition Collateral.  As adequate protection for the Adequate Protection Amount, and solely to the extent of same, the Prepetition Secured Parties are hereby granted the following:

(i) *Adequate Protection Liens*. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection against any diminution in value of the Prepetition Collateral that is subject to validly perfected secured liens, including Cash Collateral, effective as of the Petition Date and perfected without the need for execution by the Debtor or the recordation or other filing by the Prepetition Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Secured Parties of any Adequate Protection Collateral (as defined below), the Prepetition Secured Parties, solely to the extent of any diminution in value of the Prepetition Collateral, as security for the payment of the Adequate Protection Amount, valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests in (collectively, the "Adequate Protection Liens") any and all tangible and intangible pre- and post-petition property of the Debtor, whether existing before, on or after the Petition Date, together with any proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate Protection Collateral"), *provided*, *that* "Adequate Protection Collateral" shall not include proceeds of any claims or causes of action of the Debtor arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law avoidance actions under chapter 5 of the Bankruptcy Code upon entry of a Final Order providing for such relief.

(ii) The Adequate Protection Liens shall be junior only to the Carve-Out (as defined below), the superpriority lien as and when granted to the Final DIP portion, as and when approved, and any Permitted Encumbrance. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection

Collateral. The Adequate Protection Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code. The Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Debtor's Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Debtor's Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case").

(iii) *Adequate Protection Superpriority Claims*. The Adequate Protection Amount due to the Prepetition Secured Parties shall constitute an allowed superpriority administrative expense claim against the Debtor in the amount of any diminution in value of the Prepetition Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor and any successor trustee or creditor in this Chapter 11 Case or any Successor Case (the "Adequate Protection Superpriority Claims"); *provided*, *however*, that, such Adequate Protection Superpriority Claims shall be subordinate only to fees payable under 28 U.S.C. § 1930.

5. Event of Default. The occurrence and continuance of any of the following events, unless waived or modified in writing by the Prepetition Secured Parties, shall constitute an event of default (collectively, the "Events of Default"):

9

(i) the failure of the Debtor to obtain entry of the Final Order from this Court within twenty (20) days after the Petition Date, subject to the Court's availability;

(ii) the Adequate Protection Liens cease to be in full force and effect, or cease to create a perfected security interest in, and lien on, the Prepetition Collateral purported to be created thereby;

(iii) the failure of the Debtor to perform or comply with any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, including all Budget Covenants;

(iv) the Court enters an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code authorizing an action by a lienholder with respect to assets of the Debtor on which such lienholder has a lien with an aggregate value in excess of $50,000;

(v) the entry of an order: (a) appointing a trustee, receiver or examiner with expanded powers, including to manage the Debtor's business, with respect to the Debtor, (b) dismissing the Chapter 11 Case, (c) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, in each case where such order has become a final order not subject to appeal, or (d) terminating the Debtor's exclusivity period under section 1121 of the Bankruptcy Code for any reason whatsoever;

(vi) the Debtor, after the Petition Date, takes any action, or as to insiders, permits any action, that would result in an "ownership change" as such term is used in section 382 of title 26 of the United States Code; and

(vii) the Debtor breaches or fails to comply with the terms of this Interim Order, the DIP Promissory Note, the Final Order or the Plan, in any material respect.

6.       <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence of an Event of Default and following five (5) business days after delivery of the Carve-Out Trigger Notice (as defined below) to the Debtor, the U.S. Trustee, and the Subchapter V Trustee (the "<u>Remedies Notice Period</u>"), the Debtor's right to use Cash Collateral in accordance with the terms of this Interim Order shall be terminated and the Maturity Date of the DIP Facility shall occur, and the Prepetition Secured Parties shall be permitted to exercise any remedies permitted by law, including any of the following actions, without application or motion to, or further orders from, the Court or any other court, and without interference from the Debtor or any other party in interest, unless the Court orders otherwise during the Default Notice Period:

(i)      declare all or any portion of the outstanding obligations under the DIP Facility due and payable, whereupon the same shall become forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Debtor;

(ii)     set off any amounts held as Cash Collateral;

(iii)    enforce all liens and security interests in the Prepetiton Collateral;

(iv)    institute proceedings to enforce payment of the Prepetition Secured Obligations;

(v)     terminate the obligation of DIP Lender to make loans under the DIP Facility; and

(vi)    exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Promissory Note, the Bankruptcy Code, other applicable law or pursuant to this Interim Order, including, without limitation, exercising any and all rights and remedies with respect to the Prepetition Collateral or any portion thereof.

7.  During the Remedies Notice Period or thereafter, the Debtor, the Subchapter V Trustee, or the U.S. Trustee may seek an expedited hearing for the purpose of obtaining an order authorizing the Debtor's continued use of Cash Collateral or the continuation of the Maturity Date of the DIP Facility or any other issue that the Court can consider during such period.  Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtor shall automatically, without further notice or order of the Court, no longer have the right to use Cash Collateral and the Maturity Date shall have occurred.

8.  <u>Carve-Out</u>.  The Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens shall, in all instances, be subject and subordinate to prior payment of the Carve-Out.  As used in this Interim Order, the "<u>Carve-Out</u>" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) to the extent allowed by this Court, all accrued unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and  the Subchapter V Trustee appointed in this Chapter 11 Case (and together with the Debtor Professionals, the "<u>Professionals</u>") at any time on or before one business day following delivery by the Prepetition Secured Parties of a Carve-Out Trigger Notice to the extent provided for in the Budget, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iii) Allowed Professional Fees of Professionals in an aggregate amount not to exceed $35,000 incurred after delivery by the Prepetition Secured Parties of the Carve-Out Trigger Notice, to the extent allowed by this Court (the amounts set forth in this clause (iii) being the "<u>Post Carve-Out Trigger Notice Cap</u>"); *provided* that under no

circumstances shall any success, completion, or similar fees be payable from the Post Carve-Out Trigger Notice Cap. For purposes of this Interim Order, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Secured Parties to counsel to the Debtor, the U.S. Trustee, and the Subchapter V Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post Carve-Out Trigger Notice Cap has been invoked.

9. No Third-Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

10. Section 506(c) Claims. Upon entry of a Final Order providing for such relief, no costs or expenses of administration which have been or may be incurred in this Chapter 11 Case through the date of termination of the Debtor's authority to use Cash Collateral hereunder shall be charged against or recovered from the Prepetition Secured Parties or any of their claims or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Prepetition Secured Parties, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders.

11. No Marshaling/Applications of Proceeds. Upon entry of a Final Order providing for such relief, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral (including the Cash Collateral).

12. No Waiver of Prepetition Secured Parties' Rights. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not

constitute a waiver of, expressly or implicitly, the Prepetition Secured Parties' rights with respect to any entity or with respect to any other collateral owned or held by any entity.

13. <u>Section 552(b)</u>. Upon entry of a Final Order providing for such relief, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

14. <u>Credit Bidding.</u> Subject to entry of the Final Order and pursuant and subject to section 363(k) of the Bankruptcy Code, the Prepetition Secured Parties (to the extent that they have valid perfected security interests, and the DIP Lender shall have the right, without further application to or approval by the Court, to "credit bid" the full amount of the DIP Loan in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy Code.  In connection with the foregoing, the Prepetition Secured Parties and/or the DIP Lender shall have the right to assign its claim and, by extension, its right to "credit bid" all or any portion of the Prepetition Secured Obligations or DIP Loans, as applicable, to a newly-formed acquisition vehicle.

15. <u>Proofs of Claim.</u>  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in this Chapter 11 Case or a Successor Case to the contrary, the Prepetition Secured Parties are not required to file a proof of claim in this Chapter 11 Case for any claim described in this Interim Order.

14

16. <u>Binding Effect of this Interim Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Prepetition Secured Parties, all other creditors of any of the Debtor, any Creditors' Committee or any other Court-appointed committee appointed in this Chapter 11 Case, and all other parties in interest and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate of the Debtor or with respect to the property of the estate of the Debtor in the Chapter 11 Case or upon dismissal of this Chapter 11 Case.

17. <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (i) confirming any plan in any of this Chapter 11 Case; (ii) converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing this Chapter 11 Case.

18. <u>Final Hearing</u>.  The Final Hearing on the Motion shall be held on February 16, 2024, at 10:00 a.m. (prevailing Eastern Time).  Any objections or responses to entry of the Final Order shall be filed no later than 4:00 p.m., prevailing Eastern Time, on February 9, 2024 (the "<u>Objection Deadline</u>") and served on (i) proposed counsel to the Debtor, Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Wilmington, DE 19801, Attn: Ronald S. Gellert (rgellert@gsbblaw.com); (ii) Granicus IP, LLC; (iii) the Subchapter V Trustee, David M. Klauder, Esq., Bielli & Klauder LLC, 1204 N. King Street, Wilmington, DE 19801, and (iv) the Office of the United States Trustee for the District of Delaware, Attn: Rosa Sierra-Fox, Esq., 844 N. King Street, Wilmington, Delaware 19801.

19. <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

20. <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

*[Signature]*

**Dated: January 26th, 2024**
**Wilmington, Delaware**

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE